UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

ERIC WENZEL,

               Plaintiff,

    – against –

CANTOR FITZGERALD & CO.,

               Defendant.

**COMPLAINT AND JURY DEMAND**

Case No. _____

------------------------------------- x

Plaintiff Eric Wenzel, by his attorneys, Sapir Schragin LLP and Law Offices of Patricia M. Mulligan, for his Complaint against Cantor Fitzgerald & Co. ("Cantor Fitzgerald" or the "Company") alleges as follows:

## NATURE OF THE CLAIMS

1. Mr. Wenzel brings this Complaint against Cantor Fitzgerald because of the unlawful termination of his employment in violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* after he questioned the Company's parental leave policies and took leave to care for his newborn daughter and wife, both of whom were suffering from medical complications after the birth.

2. Only twelve (12) days after he returned from leave he was notified that his employment was being terminated because the Company allegedly could not afford his salary even though it raised his salary by 50% ($50,000) only two months prior, and his direct comparator, the Co-Head of the Equity Options Desk along with Mr. Wenzel, earned more than double the amount earned by Mr. Wenzel and retained his employment because he did not question the Company's

policies and did not take leave to care for his family beyond that permitted under the Company's parental leave policy.

3.  Mr. Wenzel also brings this Complaint to challenge the unlawful discriminatory termination of his employment by Cantor Fitzgerald based upon his gender, familial status and marital status in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. §§ 290, *et. seq.* and gender and marital status under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*, and the denial of equal terms or conditions of employment by adopting and operating a parental leave policy which discriminates against fathers and/or married fathers in the provision of paid parental leave by denying them, including Mr. Wenzel, additional leave benefits provided to female employees.

4.  The primary caregiver distinction used by Cantor Fitzgerald to justify providing female birth mothers additional leave benefits has a discriminatory impact baked in because it presumes that birth mothers are the primary caregivers, and requires that fathers to prove their primary caregiver status through affidavits not required of birth mothers, effectively compelling fathers such as Mr. Wenzel to force their wives to go back to work in order to receive primary caregiver status and the additional benefits that come with it. In doing so, the policy and practice relies on and reinforces archaic gender-based stereotypes that men are not or should not be primary caregivers to newborn children and instead, should return to work and earn a living, while women are primary caregivers and should be required to stay home and take care of the kids.

## JURISDICTION, VENUE AND PREREQUISITES TO SUIT

5.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Mr. Wenzel's claims are brought pursuant to a federal statute, the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq*.

6. The Court has supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367 (a) because the state law claims are so closely related to Mr. Wenzel's federal claims as to form the same case or controversy.

7. Personal jurisdiction over Defendant is proper because it is a New York partnership with its principal place of business in New York, it transacted and regularly did business in New York, engaged in a course of conduct in New York, committed acts within the state which caused injury to Mr. Wenzel in New York, and reasonably should have expected its unlawful acts to have consequences in New York.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because, at all relevant times, Defendant resided in the Southern District of New York, conducted business in this District and a substantial part of the events or omissions giving rise to the claim occurred within this District.

9. Mr. Wenzel timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 13, 2018, alleging gender discrimination in violation of the Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. The Charge was transferred to the New York State Division of Human Rights ("NYSDHR") for investigation. On October 21, 2019, the NYSDHR issued a Determination and Dismissal for Administrative Convenience. On November 22, 2019, counsel requested a Notice of Right to Sue from the EEOC. The EEOC has yet to issue the Notice of Right to Sue Letter. Upon issuance, Mr. Wenzel will amend this Complaint to add a claim alleging gender discrimination under Title VII.

10. Pursuant to NYCHRL § 8-502, a copy of the Complaint will be served upon the New York City Commission on Human Rights and the New York City Law Department, Office

3

of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of that section.

11. Any and all other prerequisites to the filing of this suit have been met.

## THE PARTIES

12. Plaintiff Mr. Wenzel is a resident of Nassau County, New York, and at all relevant times was an employee of Defendant. At all relevant times, Mr. Wenzel was a covered employee within the meaning of the FMLA, NYSHRL and NYCHRL.

13. Defendant Cantor Fitzgerald is a partnership organized under the laws of the State of New York with its principal place of business in New York County, New York. At all relevant times, Cantor Fitzgerald was a covered employer within the meaning of the FMLA, NYSHRL, and NYCHRL.

## FACTUAL ALLEGATIONS

### A.   Cantor Fitzgerald's Parental Bonding Leave Policy

14. Cantor Fitzgerald's Policy on Leave for Birth or Adoption ("Parental Bonding Leave Policy"), revised as of February 1, 2018, provides that full-time employees with at least one year of service are eligible for two (2) weeks of paid parental bonding leave benefits to be taken within twelve (12) months of the birth of the employee's child.

15. The Policy further provides that an additional eight (8) weeks of primary caregiver leave is available to employees, e.g., "single parents" or those "caring for children while their spouses or partners are working," who are serving as the primary caregiver. In order to obtain primary caregiver status, the employee must submit an affidavit affirming primary caregiver status. Supporting documentation may be required in some circumstances.

16.     Thus, in the case of Mr. Wenzel and other men and/or married men at the Company, if they are not single and their wives do not work, then they either: (1) receive less parental leave benefits than female employees; or (2) are forced to send their wives into the workforce in order to ensure that they can receive equal time under the policy to bond with their newborn children. Female employees are not required to engage in such measures to obtain the full ten (10) weeks of leave provided to primary caregivers.

17.     Additionally, under the Policy, birth mothers are entitled to an additional 6 weeks of salary continuation "assuming the birth qualifies as a 6-week short-term disability" further widening the disparate parental leave benefits provided to female employees compared to their male counterparts.

18.     On February 1, 2018, Lori Pennay, Cantor Fitzgerald's Global Head of Human Resources, sent a Company-wide email announcing revisions to Cantor Fitzgerald's Parental Bonding Leave Policy as noted above.  According to the email, in relevant part, "Full-time Employees with at least one year of service are eligible for the following paid leave at 100% of their base weekly salary/wage: Birth mothers: Sixteen (16) weeks if primary caregiver [and] New parents other than birth mothers: Ten (10) weeks if primary caregiver (2 weeks if not)."

**B.     The Unlawful Termination of Mr. Wenzel's Employment**

19.     Mr. Wenzel began his employment with Cantor Fitzgerald in September 2011.  At all relevant times, Mr. Wenzel was employed in the position of Managing Director, Co-Head of the Equity Options Trading Desk.  Mr. Wenzel reported to Senior Managing Director Peter Cecchini.

20.     Mr. Wenzel's work performance was consistently satisfactory or above satisfactory.  On March 12, 2018, just two months prior to being informed that his employment

was being terminated allegedly because the Company could not afford his salary, he was given a $50,000 pay increase, raising his base salary from $100,000 to $150,000.

21.     In early 2018, Mr. Wenzel gave notice to Cantor Fitzgerald of his wife's pregnancy, her due date and his intention to take time off to bond with his newborn child. Cantor Fitzgerald was aware of his need for FMLA leave but he was not advised of his rights under the FMLA, or any of Cantor Fitzgerald's leave policies.

22.     On March 29, 2018, Mr. Wenzel's wife gave birth to their second child via cesarean section. Unfortunately, Mr. Wenzel's daughter was born with complications necessitating significant medical care which continued for weeks after her birth.

23.     According to Cantor Fitzgerald's Parental Bonding Leave Policy, as the birth father, Mr. Wenzel was entitled to two (2) weeks of leave to care for his newborn baby. Given the complications noted above, Mr. Wenzel realized that he needed more than two (2) weeks off to take care of his newborn, his other infant son and his wife who was recovering from surgery.

24.     On April 5, 2018, Mr. Wenzel wrote to Ms. Pennay requesting information on the amount of leave he was entitled to take given his circumstances. The Parental Bonding Leave Policy had recently been revised on February 1 and Mr. Wenzel was unclear about his rights based on Ms. Pennay's February 1 announcement. Specifically, Mr. Wenzel asked Ms. Pennay, "I am now a father of 2 with a newborn and a 2 and ½ year old son; which I am primary care giver as my wife recovers. Regarding the new policy for family leave, I wanted to write to confirm what amount of leave I am entitled to." Ms. Pennay admittedly never responded to Mr. Wenzel's email. Neither did anyone else from Human Resources. Despite being aware of the need for leave and his primary caregiver status, Cantor Fitzgerald never notified Mr. Wenzel of his rights to take leave

under the FMLA, New York State Paid Family Leave or Company policy. They simply left it up to him and when he did what he thought was appropriate, his employment was terminated.

25. In the absence of any guidance from the Company on his rights as a birth father and given his limited entitlement of two (2) weeks of leave, Mr. Wenzel was concerned that if he took off any additional time, it would be viewed unfavorably and jeopardize his livelihood. Mr. Wenzel, however, made the difficult choice to take time off from work to care for his family during this critical time. Regrettably, Mr. Wenzel's concerns were well founded, and his commitment to his family was the death knell of his career at Cantor Fitzgerald – a mere 12 days after returning from leave, he was notified that his employment was being terminated. Mr. Wenzel needed, and dared to take, leave clearly intended only for female employees, as evidenced by the termination of employment shortly after exceeding the two (2) week leave allotted for non-primary caregivers, *i.e.*, men.

26. Mr. Wenzel returned to work on April 23, 2018. Mr. Wenzel was then absent from work from April 26 through May 1 because of a medical emergency involving his daughter who ended up in the hospital. At this point, despite management and human resources knowing about his daughter's condition, his family situation, and his need for leave, he was still never advised of his rights under the FMLA, or any of Cantor Fitzgerald's leave policies.

27. Mr. Wenzel returned to work on May 2, 2018. On May 6, 2018, he notified his manager, Mr. Cecchini, that he would be late for work the next day, Monday, May 7, 2018, because he had to assist his wife in taking their daughter to a medical appointment. After the appointment, he reported to work and worked a full day. Yet again, the Company's continued knowledge of his daughter's condition, his family situation, and his need for leave, he was still never advised of his rights under the FMLA, or any of Cantor Fitzgerald's leave policies.

28. The next week, on May 14, 2018, Mr. Cecchini notified Mr. Wenzel that his employment was being terminated effective June 15, 2018 because the Company could not afford his salary. The reason provided by Mr. Cecchini is pretext for the underlying bias against Mr. Wenzel because he questioned the Company's leave policies, exercised his rights under the various leave laws, and upon information and belief, because the Company was concerned that Mr. Wenzel would continue to miss time because of his family's ongoing medical issues.

29. Mr. Wenzel was allegedly earning too much for the Company in May but his salary was increased by 50% ($50,000) two months earlier in March. Additionally, the other Co-Head of the Equity Options Desk remained employed by Cantor Fitzgerald despite earning more than twice as much as Mr. Wenzel. In fact, Mr. Cecchini even commented to Pascal Bandelier, Global Head of Equities, that the other Co-Head's salary was too high based on his performance, yet he retained his employment. The only thing differentiating the two is that Mr. Wenzel questioned the Company's leave policies and exercised his rights to take leave as a father of a newborn child but took a longer leave than that provided for fathers pursuant to the Company's Policy.

## FIRST CAUSE OF ACTION
*(Interference with Plaintiff's Rights Under the FMLA)*

30. Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

31. Mr. Wenzel was eligible for leave under the FMLA. He was a full-time employee who had worked more than 1,250 during the 12-month period prior to his need for leave. Defendant is an employer covered by the FMLA as it employs more than 50 employees at its New York City Headquarters where Mr. Wenzel worked.

32. Mr. Wenzel attempted to exercise his rights under the FMLA by notifying Defendant of his need for FMLA leave following the birth of his daughter and the resulting medical

complications to his daughter and wife and requesting information about Defendant's family leave policies. Defendant failed to provide Mr. Wenzel with the requested information or the required FMLA forms and did not provide Mr. Wenzel with necessary FMLA leave or the job protections that come with approved FMLA leave. As a result, Defendant unlawfully interfered with Mr. Wenzel's exercise of his rights under the FMLA.

33. As a result of Defendant's conduct, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other monetary damages and lost privileges of employment.

34. Defendant's conduct was willful, egregious, and not taken in good faith, and, therefore, Mr. Wenzel is entitled to liquidated damages.

## SECOND CAUSE OF ACTION
***(Retaliation in Violation of the FMLA)***

35. Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

36. Mr. Wenzel was eligible for leave under the FMLA. He was a full-time employee who had worked more than 1,250 during the 12-month period prior to his need for leave. Defendant is an employer covered by the FMLA as it employs more than 50 employees at its New York City Headquarters where Mr. Wenzel worked.

37. Following the birth of his daughter at the end of March 2018, despite the lack of response or guidance from Defendant, Mr. Wenzel took time off to care for his newborn daughter and his wife, both of whom had ongoing medical complications. He returned to work on May 2.

38. On May 14, 2018, only twelve (12) days after he returned to work from taking care of his family, he was notified that his employment was being terminated effective June 15, 2018. The termination of his employment was in retaliation for him exercising his rights under the FMLA and taking time off to care for his newborn child and wife.

39. As a result of Defendant's conduct, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other monetary damages and lost privileges of employment.

40. Defendant's conduct was willful, egregious, and not taken in good faith, and, therefore, Mr. Wenzel is entitled to liquidated damages.

## THIRD CAUSE OF ACTION
*(Discrimination Based Upon Plaintiff's Gender in Violation of the NYSHRL)*

41. Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

42. Defendant's Parental Bonding Leave Policy treats mothers as presumptively eligible for primary caregiver leave status and additional benefits, while treating fathers as presumptively ineligible for primary caregiver leave unless they submit an affidavit affirming primary caregiver status. By presumptively treating mothers as the primary caregivers and eligible for additional benefits compared to fathers, Defendant has imposed a sex-based classification that treats birth fathers different than birth mothers.

43. Defendant's disparate treatment of men and women in terms of their leave rights, relies on and reinforces archaic gender-based stereotypes that men are not or should not be primary caregivers to newborn children and instead, should return to work and earn a living, while women are primary caregivers and should be required to stay home and take care of the kids. When Mr. Wenzel fought against these stereotypes and sought to take extended time off to

care for his daughter, his employment was terminated.

44. By instituting and operating these discriminatory policies and practices, Defendant has intentionally treated Mr. Wenzel differently than his female counterparts with respect to the compensation, terms, conditions, and privileges of employment, in violation of Title VII.

45. Defendant violated the NYSHRL and discriminated against Mr. Wenzel on the basis of his gender by: (i) limiting his paid parental leave benefits to only 2 weeks compared with female employees who are provided significantly greater leave benefits (8 weeks more leave time) by virtue of their presumed designation as the primary caregiver; (ii) failing to inform Mr. Wenzel of the Company's applicable policy and laws regarding paid and/or unpaid leave to bond and care for his newborn child; (iii) failing to provide Mr. Wenzel the additional leave to which he was entitled and which female employees are provided under the parental leave policy; and (iv) terminating his employment because he upended the stereotypical gender norms embedded in the Company by taking more leave than men were permitted to take under the Parental Bonding Leave Policy.

46. As a result of Defendant's discrimination, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other pecuniary damages and lost privileges of employment.

47. As a result of Defendants' discrimination, Mr. Wenzel has suffered, and continues to suffer severe emotional distress, pain and suffering, and physical and mental anguish.

48. Defendant's conduct was willful, wanton and egregious, and, therefore, Mr. Wenzel is entitled to punitive damages.

11

## FOURTH CAUSE OF ACTION
*(Discrimination Based Upon Plaintiff's Gender in Violation of the NYCHRL)*

49. Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

50. Defendant's Parental Bonding Leave Policy treats mothers as presumptively eligible for primary caregiver leave status and additional benefits, while treating fathers as presumptively ineligible for primary caregiver leave unless they submit an affidavit affirming primary caregiver status. By presumptively treating mothers as the primary caregivers and eligible for additional benefits compared to fathers, Defendant has imposed a sex-based classification that treats birth fathers different than birth mothers.

51. Defendant's disparate treatment of men and women in terms of their leave rights, relies on and reinforces archaic gender-based stereotypes that men are not or should not be primary caregivers to newborn children and instead, should return to work and earn a living, while women are primary caregivers and should be required to stay home and take care of the kids. When Mr. Wenzel fought against these stereotypes and sought to take extended time off to care for his daughter, his employment was terminated.

52. By instituting and operating these discriminatory policies and practices, Defendant has intentionally treated Mr. Wenzel differently than his female counterparts with respect to the compensation, terms, conditions, and privileges of employment, in violation of the NYCHRL.

53. Defendant violated the NYCHRL and discriminated against Mr. Wenzel on the basis of his gender by: (i) limiting his paid parental leave benefits to only 2 weeks compared with female employees who are provided significantly greater leave benefits (8 weeks more leave time) by virtue of their presumed designation as the primary caregiver; (ii) failing to inform Mr. Wenzel

of the Company's applicable policy and laws regarding paid and/or unpaid leave to bond and care for his newborn child; (iii) failing to provide Mr. Wenzel the additional leave to which he was entitled and which female employees are provided under the parental leave policy; and (iv) terminating his employment because he upended the stereotypical gender norms embedded in the Company by taking more leave than men were permitted to take under the Parental Bonding Leave Policy.

54. As a result of Defendant's discrimination, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other pecuniary damages and lost privileges of employment.

55. As a result of Defendants' discrimination, Mr. Wenzel has suffered, and continues to suffer severe emotional distress, pain and suffering, and physical and mental anguish.

56. Defendant's conduct was willful, wanton and egregious, and, therefore, Mr. Wenzel is entitled to punitive damages.

## FIFTH CAUSE OF ACTION
*(Discrimination Based Upon Plaintiff's Familial Status in Violation of the NYSHRL)*

57. Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

58. Following the birth of his daughter at the end of March 2018, despite the lack of response or guidance from Defendant, Mr. Wenzel took time off to care for his newborn daughter and his wife. He returned to work on May 2.

59. On May 14, 2018, only twelve (12) days after he returned to work from taking care of his family, he was notified that his employment was being terminated effective June 15, 2018.

60.     Mr. Wenzel's employment was terminated because he took leave to care for his family in contravention to the Company's work first, family last mentality which penalizes employees for having families and not being committed 100% to the Company. As a result, Defendant violated his rights under the NYSHRL.

61.     As a result of Defendant's discrimination, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other pecuniary damages and lost privileges of employment.

62.     As a result of Defendants' discrimination, Mr. Wenzel has suffered, and continues to suffer severe emotional distress, pain and suffering, and physical and mental anguish.

63.     Defendant's conduct was willful, wanton and egregious, and, therefore, Mr. Wenzel is entitled to punitive damages.

## SIXTH CAUSE OF ACTION
*(Discrimination Based Upon Plaintiff's Marital Status in Violation of the NYSHRL)*

64.     Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

65.     Defendant's Parental Bonding Leave Policy treats single parents as presumptively eligible for primary caregiver leave status and additional benefits, while treating married employees and fathers, such as Mr. Wenzel, as presumptively ineligible for primary caregiver leave unless they submit an affidavit affirming primary caregiver status. By presumptively treating single parents as the primary caregivers and eligible for additional benefits compared to fathers, Defendant has imposed an improper classification that treats single, non-married employees better than married employees like Mr. Wenzel.

66.     By instituting and operating these discriminatory policies and practices, Defendant has intentionally treated Mr. Wenzel differently than his single, non-married

14

counterparts with respect to the compensation, terms, conditions, and privileges of employment, in violation of the NYSHRL.

67. Defendant violated the NYSHRL and discriminated against Mr. Wenzel on the basis of his marital status by: (i) limiting his paid parental leave benefits to only 2 weeks compared with single, non-married employees who are provided significantly greater leave benefits (8 weeks more leave time) by virtue of their presumed designation as the primary caregiver; (ii) failing to provide Mr. Wenzel the additional leave to which he was entitled and which single, non-married employees are provided under the parental leave policy; and (iii) terminating his employment because he took more leave than married men were permitted to take under the Parental Bonding Leave Policy.

68. As a result of Defendant's discrimination, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other pecuniary damages and lost privileges of employment.

69. As a result of Defendants' discrimination, Mr. Wenzel has suffered, and continues to suffer severe emotional distress, pain and suffering, and physical and mental anguish.

70. Defendant's conduct was willful, wanton and egregious, and, therefore, Mr. Wenzel is entitled to punitive damages.

## SEVENTH CAUSE OF ACTION
*(Discrimination Based Upon Plaintiff's Marital Status in Violation of the NYCHRL)*

71. Mr. Wenzel realleges and incorporates by reference all allegations in the preceding paragraphs as if fully set forth herein.

72. Defendant's Parental Bonding Leave Policy treats single parents as presumptively eligible for primary caregiver leave status and additional benefits, while treating married employees and fathers, such as Mr. Wenzel, as presumptively ineligible for primary

caregiver leave unless they submit an affidavit affirming primary caregiver status. By presumptively treating single parents as the primary caregivers and eligible for additional benefits compared to fathers, Defendant has imposed an improper classification that treats single, non-married employees better than married employees like Mr. Wenzel.

73. By instituting and operating these discriminatory policies and practices, Defendant has intentionally treated Mr. Wenzel differently than his single, non-married counterparts with respect to the compensation, terms, conditions, and privileges of employment, in violation of the NYCHRL.

74. Defendant violated the NYCHRL and discriminated against Mr. Wenzel on the basis of his marital status by: (i) limiting his paid parental leave benefits to only 2 weeks compared with single, non-married employees who are provided significantly greater leave benefits (8 weeks more leave time) by virtue of their presumed designation as the primary caregiver; (ii) failing to provide Mr. Wenzel the additional leave to which he was entitled and which single, non-married employees are provided under the parental leave policy; and (iii) terminating his employment because he took more leave than married men were permitted to take under the Parental Bonding Leave Policy.

75. As a result of Defendant's discrimination, Mr. Wenzel has suffered, and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other pecuniary damages and lost privileges of employment.

76. As a result of Defendants' discrimination, Mr. Wenzel has suffered, and continues to suffer severe emotional distress, pain and suffering, and physical and mental anguish.

77. Defendant's conduct was willful, wanton and egregious, and, therefore, Mr. Wenzel is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Wenzel respectfully requests that the Court:

A. Declare Defendant's conduct as described above to be a violation of Mr. Wenzel's rights under the FMLA;

B. Declare Defendant's discriminatory conduct as described above to be a violation of Mr. Wenzel's rights under the NYSHRL and NYCHRL.

C. Reinstate Mr. Wenzel to his prior position with Defendant with all seniority and terms and conditions and benefits as if he had been employed continuously had his employment not been unlawfully terminated;

D. Award Mr. Wenzel damages for all compensation, benefits, and lost opportunities of employment that he would have been entitled to receive had Defendant not unlawfully terminated his employment, including but not limited to back pay, lost benefits, lost bonus, stock, equity and/or partnership units, or the value thereof, front pay, and pre-judgment and post-judgment interest on all sums awarded to Mr. Wenzel;

E. Award Mr. Wenzel compensatory damages for emotional distress, pain and suffering, and mental anguish;

F. Award Mr. Wenzel liquidated and punitive damages;

G. Award Mr. Wenzel his reasonable attorney's fees and costs in this action; and

H. Award such other relief as the Court deems just and proper.

**JURY DEMAND**

Mr. Wenzel demands trial by jury of all issues in this action properly triable before a jury.

Dated: White Plains, New York
May 14, 2020

                        **SAPIR SCHRAGIN LLP**

By: *Howard Schragin*
Howard Schragin, Esq.
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366
hschragin@sapirschragin.com

-and-

**LAW OFFICES OF
PATRICIA M. MULLIGAN**

By: *Patricia M. Mulligan*
Patricia M. Mulligan, Esq.
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 328-3300
pmulligan@mulliganlawny.com

*Attorneys for Plaintiff Eric Wenzel*